IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BERTHA RUIZ,                               )
                                           )
                  Petitioner,              )      No. C 06-0775 CRB (PR)
                                           )
        vs.                                )      ORDER DENYING PETITION
                                           )      FOR A WRIT OF HABEAS
GUILLERMINA HALL, Warden,                  )      CORPUS
                                           )
                  Respondent.              )
_____            )
                                           )

        Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254.  For the

reasons set forth below, the petition is denied.

                          **STATEMENT OF THE CASE**

        After a jury trial in the Superior Court of the State of California in and for

the County of Santa Clara, petitioner was found guilty of multiple offenses:

possession of methamphetamine for sale (count 1, Cal. Health & Saf. Code §

11378), conspiracy to transport or sell a controlled substance (count 2, Cal. Penal

Code § 182(a)(1)), cultivation of marijuana (count 4, Cal. Health & Saf. Code §

11358), possession of marijuana for sale (count 5, Cal. Health & Saf. Code §

11359), possession of a firearm by a felon (count 6, Cal. Penal Code §

12021(a)(1)), and possession of ammunition by a felon (count 7, Cal. Penal Code

§ 12316(b)).

The jury found that petitioner was personally armed with a shotgun during count 1 and that she was armed with a shotgun during the marijuana offenses. It also found true the drug quantity enhancement of count 1, that petitioner possessed over one kilogram of methamphetamine for sale.

On August 17, 2000, petitioner was sentenced to three years, four months in state prison. The court struck the drug quantity enhancement, pursuant to Penal Code section 1385, "in view of the nature and circumstances of the temporary possession by the [petitioner] of the substance involved," and the personal arming enhancement of count 1 "in view of the explanation of the co-defendant Manuel Ruiz as to the [petitioner's] knowledge of that particular weapon." The court stayed arming enhancements on counts 4, 5, and 6 pursuant to Penal Code section 654.

Petitioner appealed and, on September 4, 2002, the California Court of Appeal affirmed the judgment of conviction. On November 20, 2002, the Supreme Court of California denied review.

In conjunction with her direct appeal, petitioner also filed a petition for a writ of habeas corpus. The California Court of Appeal issued an order to show cause returnable in the superior court. The superior court conducted an evidentiary hearing and, on October 15, 2004, denied the petition.

On March 4, 2005, petitioner filed a new petition for a writ of habeas corpus in the court of appeal. On April 14, 2005, the California Court of Appeal denied the petition and, on June 15, 2005, the Supreme Court of California denied review.

Petitioner timely filed the instant petition for a federal writ of habeas corpus under 28 U.S.C. § 2254. Per order filed on June 2, 2006, the court found that the petition contained cognizable claims under § 2254 and ordered

2

respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> A number of undercover drug purchases led a drug task force to two adjoining residences in Morgan Hill.
>
> Undercover San Jose Police Officer Kurt Clarke made several drug purchases from [co]defendant Sam Rivera . . . .
>
> [Clarke purchased methamphetamine and cocaine from Rivera on several occasions in 1999 (July 23, Aug. 6, Sept. 1, and Oct. 6). Normally, Rivera would make phone calls to make sure the drugs were available. Rivera would have Clarke drive him to a single-family dwelling in Morgan Hill, unit 9, the residence of [co]defendant Ana Avila and Daniel Marin. Rivera would go into unit 9 and return with the drugs. On October 19, Rivera told Clarke he would sell him four pounds of methamphetamine for $ 24,000.]
>
> The police plan was to execute a search warrant on October 20, 1999, on unit 9 and arrest all coconspirators. That day Clarke met Rivera . . . [T]hey drove to unit 9.
>
> . . . .
>
> Rivera went back inside unit 9 and came out with another Hispanic male, Daniel Marin, with whom he talked for a while. . . Rivera said he had the methamphetamine . . . Rivera went inside unit 9 with Marin. Rivera returned with a brown paper bag that contained almost a pound, 432.75 grams, of methamphetamine . . . When Rivera produced this methamphetamine, Clarke gave the bust signal and drove off while a number of officers converged on unit 9.
>
> Some officers arrested Rivera in front of the residence, finding him holding the brown bag with a pound of methamphetamine. . . .
>
> As Santa Clara Police Officer Archie Hayes drove up to unit 9, he saw Ana Avila and a small child go out the back door as officers approached the front door. She was carrying something in front of her and heading toward unit 11 at the same address. Unit 11 proved to be the residence of [petitioner] and [her ex-husband] Manuel Ruiz. Hayes got out of his car and walked after Avila until he saw Daniel Marin also going out the back door holding a empty laundry basket. From prior surveillance he knew Marin was one of the suspects, so he and other officers arrested Marin.

3

Five minutes later Officer Hayes saw Avila approaching him from unit 11. She was carrying a potted plant, which is not what she was carrying in the other direction. Hayes tracked her footprints back to a ramp leading to the rear door of unit 11. He saw two similar potted plants on the ramp. Hayes unsuccessfully searched for contraband outside the rear of unit 11 for about 10 minutes. During the search [petitioner] came outside and spoke to him briefly. He searched for five to 10 more minutes.

Campbell Police Officer Matt Carr saw [petitioner] walking outside her residence. He talked to her for about five minutes. She went inside.  Five minutes later she met Carr at her front door. She gave him a large Tupperware container, 14 inches by 6 inches, covered by a plastic bag. Inside the container were four bricks of methamphetamine wrapped in plastic, each weighing about a pound (count 1). The bricks weighed 431 grams, 431 grams, 459 grams, and 451 grams. No usable fingerprints were found on the plastic wrapping. The bricks were packaged similarly to the pound with which Rivera was arrested.

In Officer Carr's experience, the street value of four pounds of methamphetamine is about $ 24,000. Such an amount would be possessed for sale, not personal use. It could be sold off at a price of up to $ 140 for one-sixteenth of an ounce after being diluted with a cutting agent. In Officer Clarke's experience, end users of methamphetamine may only buy a quarter gram. A gram sold for between $ 50 and $ 60. An end user would not buy a pound because it loses freshness over time.

The police found Manuel lying in a double- or queen-sized bed in the northeast bedroom of his residence. There was another bedroom in the house. Manuel was convicted in 1992 of possessing methamphetamine. Both Ruizes consented in writing to a search of their residence.

Under the bed in which Manuel had been lying was a gun case containing a unloaded but apparently operable .12 gauge shotgun (count 6) and five rounds of ammunition (count 7). Thirteen cartridges were in a larger holder outside of the gun case. The gun case could not be seen without crouching down. In the headboard of the bed was a black leather bag in which were one plastic bag containing 48.9 grams of marijuana and three plastic bags containing 48.77 grams, 12.1 grams, and 1.53 grams of methamphetamine. One of the methamphetamine baggies had a red dice design. On the headboard was a police scanner with dust on it.

Male clothing was strewn about the bedroom. There was no female clothing. In the bedroom, the police found [petitioner's] identification card in a purse. In or on a cabinet was a plastic baggie with a red dice design containing .16 grams of methamphetamine. In the bedroom cabinet were also 41 apparently used plastic baggies with a red dice design and a tube straw typically used for inhaling drugs.

4

In a desk drawer in the office in the Ruizes' residence were pay-owe sheets recording dollar amounts and telephone numbers, though no names. In the experience of Los Gatos Police Officer Matt Frisby, drug dealers keep track of accounts in this way. The police found no money in unit 11.

In a cluttered storage area at the rear of the house were several toolboxes. In one toolbox labeled, "Do not open. Manuel only." was 364 grams of marijuana in three Ziploc bags. In a black leather bag hanging on the wall was a scale and three unused plastic bags with a red dice design and two bags with a different design and other sandwich bags. Officer Carr saw methamphetamine residue on the scale.

In the storage shed behind unit 11 was a large amount, over a pound, of marijuana hanging on a rope drying (counts 4, 5). In a black plastic container in the storage shed was more marijuana.

In Officer Carr's experience, drying is part of cultivating marijuana. The large quantity of marijuana suggested it was possessed for sale. While the quantity of methamphetamine in the headboard alone did not suggest possession for sale, the packaging, the large quantity of dime bags, the electronic scale, the police scanner, and the nearby weapon and ammunition all indicated possession for sale. Users typically do not weigh out the methamphetamine they have purchased.

In Officer Clarke's experience, a main drug seller often uses a go-between to sell drugs. Experienced dealers keep drugs in one place and cash in another to prevent detection and dope rip-offs.

Ana Avila was the only defendant who testified. She testified as follows. She had been married to Daniel Marin for 15 years. . . .

She was aware he was a drug dealer. They fought about it. He used cocaine and got drunk every couple of weeks. He spent a lot of time with the Ruizes. Once they began whispering when Avila approached.

She did not know what was happening on October 20, 1999 . . . She was hanging laundry outside when Marin approached her, put something in the laundry basket under some clothes, and told her to take it quickly to the Ruizes.

Marin said, "'Take this. They know already what this is.'" She asked him what it was. He said, "You take it quickly. It's something that shouldn't matter to you." He said, "'Take these things.'" Because she was afraid of him, she did not question his request. She walked at a normal pace though he told her to hurry. Avila saw [petitioner] through the window of unit 11 and told her that Marin had sent the basket for them to put away. She told [petitioner] she was going to leave it outside. She picked up a plant that [petitioner] had given her. She figured out later drugs were in the laundry basket.

5

Avila's daughter Sarahi testified that her stepfather, Marin, was abusive to Avila. Bertha and Manuel slept in the same bedroom, but not at the same time.

**Jury Argument**

The prosecutor made the following opening argument to the jury. . . .

"Let's talk about [petitioner]. There is actually two parts to [petitioner]. The first part is the four pounds of methamphetamine that she finally takes out to the officer, and that would certainly qualify for this over a kilo enhancement." The jury could find that she did not initially realize it was methamphetamine in her house. If "she finally recognizes that what she has is methamphetamine and she decides to bring it to the cops for the purposes of disposal, [']get it out of here, I don't want it,['] if you believe all that, then she is not guilty of carrying four pounds." The jury would be instructed about momentary possession. The evidence showed that she had the drugs for about 30 minutes. "So I believe the evidence supports beyond a reasonable doubt that she possessed unlawfully four pounds of methamphetamine, albeit for about 30 minutes. It was only when she realized that the gig was up that she decides to cut her losses and give up the dope."

"That's the first part of 11378 for [petitioner], the four pounds with the enhancement. But there is actually a second argument to convict her of 11378, possession of methamphetamine for sale. Because in her house is several ounces of methamphetamine in that bag in the headboard of this room with the double bed where Manuel Ruiz was apparently laying down when the cops first came in." In a black bag in the headboard were several bags of methamphetamine and also marijuana. "This is apparently a bunch of methamphetamine that is right at her head in a room that she sleeps in. There is her current ID in that room." Another methamphetamine package was in the cabinet of the same bedroom. There was other evidence of sales, packaging materials and a scale, in [petitioner's] house.

. . . .

"[Petitioner] can be convicted under Count 1 under two different theories. One, again, is this four pounds that she has in her hands; and the second theory would be the headboard meth. But keep in mind that the headboard meth doesn't add up to a kilo. It's less than a kilo. . . . So should you say no to this but yes to this, you would also ignore that weight enhancement, okay."

Regarding the conspiracy charge, the prosecutor argued, "On October 20 is the first time that the officers are clued into the fact that there are more people involved in this 15880 Hill Road drug conspiracy because we learn that Ana Avila transports four pounds of methamphetamine over to [petitioner's] house, [petitioner] and Manuel Ruiz's house." "Interestingly, Ana Avila testified that Daniel Marin

6

gave her the dope and said, [']Go take it over to the Ruizes', to Manuel and [petitioner], they'll know what to do with it.[']" The Ruizes are in a relationship. "And we know that Ana Avila suggested that Marin was in some kind of cahoots with the Ruizes at the time of the buy bust." Experts testified that drug dealers often keep the dope in one house and cash in another. "It's absurd to think that the two houses were operating drug deals without knowing about the other people. They're two houses apart."  Like any business, you keep track of your competitors. "The fact that they were coexisting suggests as strong evidence that they were also cooperating."

"I believe the evidence supports the proposition that the Ruizes and the Avilas were involved in this conspiracy to sell drugs from the get-go. In other words, it just didn't arise on October 20th. The reason I say that is not only because it's unreasonable to believe that you could have two drug dealers two houses apart in a sort of rural area and not know about each other and coexist without also cooperating with each other, but also the fact that Ana Avila can bring over $ 24,000 worth of drugs and trust the Ruizes with it strongly suggests that there is prior understanding amongst the parties."

[Petitioner's] counsel argued to the jury as follows. There was no evidence directing police suspicion of drugs sales at unit 11, her residence, prior to October 20, 1999. There was no evidence of female clothing in the bedroom containing the shotgun. [Petitioner] gave up the drugs to the police "after 15 or 20 minutes of probably agonizing over this situation." The drugs in the house were in Manuel's bedroom, not where [petitioner] slept. The drugs in the storage areas were also with Manuel's things. It was possible that [petitioner] never went to the storage shed while the marijuana was hanging there drying. If [petitioner] were conspiring with Avila, she would not have turned the drugs over to the police.

People v. Rivera, No. H021807, 2002 Cal. App. Unpub. LEXIS 8360, at *7-24 (Cal. Ct. App. Sept. 4, 2002).

## DISCUSSION

## I.    Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## II. Claims

Petitioner seeks federal habeas relief based on claims of insufficiency of the evidence, ineffective assistance of counsel, and instructional error.

### A. Insufficiency of the Evidence

Petitioner brings three claims for relief for insufficiency of the evidence. Petitioner claims there was insufficient evidence to support her convictions for (1) conspiracy, (2) possession of methamphetamine for sale, and (3) possession of a firearm and ammunition.

The relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The reviewing court "faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear on the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

In light of 28 U.S.C. § 2254(d), a federal habeas court applies the standard of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson to the facts of the case. Id. 1275. A writ may be granted only if the state court's application of the Jackson standard was "'objectively unreasonable.'" Id. at 1275 n.13 (quoting Williams, 529 U.S. at 409).

#### 1. Conspiracy

Petitioner claims that the evidence does not support a finding she conspired

with co-defendants, Manuel Ruiz and Rivera, to sell methamphetamine, including the overt acts of Rivera meeting with undercover officer Clarke to discuss drug sales in 1999 on July 23, August 6, September 1, October 6 and 20.

A conspiracy consists of two or more persons conspiring to commit any crime.  Cal. Penal Code § 182(a)(1).  A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy.  Id. § 184. Conspiracy may be proved through circumstantial evidence inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.  People v. Cooks, 141 Cal. App. 3d 224, 311 (1983).

To prove possession of a controlled substance for sale, "the prosecution must prove beyond a reasonable doubt that (1) the defendant exercised dominion and control over the controlled substance, (2) the defendant was aware that he or she was in possession of a controlled substance, (3) the defendant was aware of the nature of a controlled substance, (4) the controlled substance was in an amount sufficient to be used for sale or consumption as a controlled substance, and (5) the defendant possessed a controlled substance with the specific intent to sell it." People v. Parra, 70 Cal. App. 4th 222, 225-26 (1999).

The California Court of Appeal's rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Based on the evidence, a jury could reasonably find that petitioner participated in a conspiracy with Manuel Ruiz and Rivera to

sell drugs.  First, there was ample evidence of drug dealing in both unit 9 and in unit 11.  For instance, in unit 9 the police found packages of methamphetamine, marijuana, several unused plastic baggies, a scale, pay-owe sheets, a police scanner, a shotgun, and ammunition.  Petitioner was also found carrying four pounds of methamphetamine worth $24,000.  The prosecution put on expert testimony that a normal user could not afford to purchase a pound of methamphetamine, much less four.

Second, there was evidence connecting the two units.  Avila transported four pounds of methamphetamine to the Ruizes, indicating a pre-existing relationship involving drug-dealing.  Avila testified that her husband, Marin, a drug dealer, was familiar with the Ruizes and that they occasionally whispered in her presence. Avila further testified that on the day of the arrests, Marin put the methamphetamine in her laundry basket and told her to take it to the Ruizes, saying, "They already know what this is."  There was expert testimony that drug dealers commonly use separate residences as stash houses.  A jury could reasonably conclude it is more than a coincidence that drugs were being sold at unit 11 and large quantities of the same drug were found two doors down in unit 9.

Regarding Marin's statement against the Ruizes, the state court reasonably found that there was a prima facie showing of a conspiracy warranting admission of the statement and that the statement was in furtherance of the conspiracy.  The state court elaborated:

> [F]rom the trial evidence it became obvious over time that someone in unit 9 was furnishing [co]defendant Samuel Rivera with methamphetamine and cocaine for undercover officer Clarke to purchase. On four separate occasions in 1999, August 6, September 1, October 6, and October 20, Rivera returned from unit 9 with drugs for Clarke that Rivera did not have before. On October 20, 1999, during Clarke's attempt to purchase four pounds of methamphetamine as previously agreed, Rivera talked with Daniel Marin in front of unit 9 and indicated to Clarke that Marin was the friend involved in the agreed sale. Rivera and Marin were obviously conspiring to sell

methamphetamine . . . .

On October 20, 1999, the police found the following indicia of methamphetamine sales throughout the Ruizes' residence, unit 11: several small packages of methamphetamine, several unused plastic baggies, a scale, pay-owe sheets, a police scanner, a shotgun, and ammunition. This evidence in the Ruizes' residence alone showed that they were involved in methamphetamine sales. (Citation omitted).

Apart from Avila's testimony, what connected these neighboring drug dealers was her conduct on October 20, 1999. On October 20, as the police closed in on unit 9, Ana Avila was seen carrying something in the direction of the Ruizes' residence that she did not have when she returned. After the police searched the Ruizes' grounds for about 20 minutes and talked to [petitioner], [petitioner] turned over a Tupperware container in which were four one-pound bricks of methamphetamine, exactly the amount that Rivera had promised to sell Clarke for $24,000. The inference is unavoidable that Marin sent the methamphetamine to the Ruizes for safe-keeping.

There was expert testimony that drug dealers commonly use stash houses to avoid police detection and to keep the drugs and cash separate. The fact that Marin was willing to entrust $24,000 worth of drugs to the Ruizes is strongly suggestive of a pre-existing relationship involving drug-dealing.

People v. Rivera, 2002 Cal. App. Unpub. LEXIS 8360, at *25-27. The state court's conclusion is not an "objectively unreasonable" application of Jackson. See Juan H., 408 F.3d at 1275 n.13. Based on the evidence, a rational trier of fact could have found beyond a reasonable doubt that petitioner participated in a conspiracy. See Jackson, 443 U.S. at 319.

Petitioner also argues that the conspiracy was to sell drugs to undercover officer Clarke and that it ended when the police arrested Rivera and Marin; thus, she argues that at most the evidence shows that she attempted to help Marin *after* the conspiracy. However, the state court reasonably concluded that the conspiracy was broader than defined by petitioner, and that the attempt to conceal the drugs from the police was at least arguably an attempt to further an ongoing conspiracy to sell methamphetamine to Clarke and others. It must be presumed that the jury viewed the facts similarly. See id. at 326.

12

1    Petitioner is not entitled to federal habeas relief on this claim.  See 28

2    U.S.C. § 2254(d).

3                    2.      Possession of methamphetamine for sale

4            Petitioner claims that the evidence does not support a finding that she had

5    an intent to sell the drugs in her possession.  Petitioner renews her argument for a

6    defense of momentary possession, that she possessed the methamphetamine only

7    for the purpose of delivering it to the police.

8            Petitioner had the four pounds of methamphetamine in her possession for 20

9    to 30 minutes before she turned it over to the police.  Officer Hayes searched

10   outside petitioner's residence for contraband after observing Avila walk to and

11   return from unit 11.  During the search, petitioner came outside and spoke to

12   Hayes briefly.  He continued to search for five to ten minutes.  Officer Carr then

13   spoke to petitioner for about five minutes.  Five minutes later petitioner gave Carr

14   the four pounds of methamphetamine.

15           At trial, the jury was instructed that possession of a controlled substance

16   can be lawful when it is momentary and solely for the purpose of abandonment,

17   disposal or destruction, and not for the purpose of concealing it from law

18   enforcement.  CALJIC No. 12.06.  The jury subsequently found true the drug

19   quantity enhancement of count 1, that petitioner possessed over one kilogram of

20   methamphetamine for sale.  However, the trial court struck the weight

21   enhancement "in view of the nature and circumstances of the temporary possession

22   by the [petitioner] of the substance involved."  Petitioner contends that her

23   argument for a defense of momentary possession is fortified by the fact that the

24   trial court struck the weight enhancement.

25           The California Court of Appeal's rejection of petitioner's claim is not an

26   "objectively unreasonable" application of Jackson.  See  Juan H., 408 F.3d at 1275

27

28                                              13

n.13.  The state court reasonably found that there was sufficient evidence to

support the conviction of possession of methamphetamine for sale.  The court

explained:

> In isolation, the fact that Bertha possessed the four bricks for 20 to 30 minutes is not conclusive of her purpose.  It is notable that she did not immediately turn that over to the police officers searching outside her house.  When these circumstances are combined with the other evidence summarized above that Bertha was participating in a conspiracy to sell methamphetamine, we conclude that there was substantial evidence of possession for sale.

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *10.

Based on the evidence of conspiracy and the fact that petitioner did not

immediately turn over to the police the four pounds of marijuana in her possession,

a rational trier of fact could have found petitioner guilty of possession of

methamphetamine for sale beyond a reasonable doubt.  See Jackson, 443 U.S. at

319.  As to the defense of momentary possession, the state court reasoned that "by

finding the drug quantity enhancement true on count 1, the jury obviously rejected

[petitioner's] defense [of momentary possession] and implicitly concluded that

[petitioner] had possessed the four bricks for purposes of sale."  As to the fact that

the trial court struck the enhancement, the state court reasonably concluded that

the  inconsistency is unimportant. The court explained:

> The law tolerates inconsistent verdicts because "the jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding 'through mistake, compromise, or lenity . . . .' [Citation.] Because the defendant is given the benefit of the acquittal, 'it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.' [Citation.]" (People v. Santamaria (1994) 8 Cal.4th 903, 911, 884 P.2d 81.) For the same reason, we do not regard the judge's ruling as invalidating the evidence supporting the jury's finding the enhancement true. "Though a court may strike an enhancement allegation in the interests of justice at sentencing when authorized to do so, the enhancement is not nullified by lenient acts of the sentencing court." (People v. Shirley (1993) 18 Cal.App.4th 40, 47.)

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *44.

14

The state court's rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim. Id.

### 3.    Possession of a firearm and ammunition

Petitioner claims that there was insufficient evidence to support her convictions of possessing as an ex-felon a shotgun and ammunition.

The contraband was found in petitioner's residence underneath the bed in which Manuel was sleeping.  Petitioner's current identification was found in a purse in the bedroom.  No female clothing was found in the room, and the gun case was not visible without crouching down.  At trial the prosecution introduced expert testimony that drug dealers often keep a firearm nearby to protect themselves against the police and from drug "rip offs."  Petitioner argues that the fact that her identification was found in the room is insufficient evidence to find her dominion and control over the shotgun and ammunition.  Petitioner further argues that the shotgun and ammunition were in Manuel's possession, that she and Manuel did not share the bedroom, and that she only entered the room to vacuum or retrieve things.

Under California law, the elements of the offense at issue are conviction of a felony and ownership, possession, custody or control of a firearm capable of being concealed on the person. No specific criminal intent is required, and a general intent to commit the proscribed act is sufficient to sustain a conviction. With respect to the elements of possession or custody, it has been held that knowledge is an element of the offense.  People v. Snyder, 32 Cal. 3d 590, 592 (1982).  "Constructive possession occurs when the accused maintains control or a

15

right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." People v. Williams, 5 Cal. 3d 211, 215 (1971).

Here, the California Court of Appeal found that there was sufficient evidence for a reasonable jury to infer that petitioner knew the shotgun and ammunition were under the bed.

> In addition to this contraband being in her residence, her identification was found in a purse in the same bedroom. This indicates that her dominion extended into this bedroom, whether or not she shared the bed with her ex-husband. Even if the contraband was hidden from a casual observer, we conclude that there was substantial evidence supporting [petitioner's] convictions for possessing the shotgun and the ammunition. In the absence of any contrary explanation for the presence of the shotgun and ammunition, it was reasonable for the jury to infer that [petitioner] knew they were under the bed in which her ex-husband was sleeping.

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *46-47. The state court's conclusion is not an "objectively unreasonable" application of Jackson. See Juan H., 408 F.3d at 1275 n.13. A rational trier of fact could reasonably conclude, based on the evidence, that the shotgun and ammunition were in a place accessible to petitioner and subject to her dominion and control, and, therefore, that she constructively possessed the contraband. See People v. Williams, 5 Cal. 3d at 215. There is no evidence that petitioner and Manuel did not share the bedroom. Furthermore, a rational trier of fact could infer, based on the evidence of conspiracy and expert testimony, that the shotgun was possessed by petitioner and Manuel for protection from the police or people trying to steal their drugs.

Petitioner also argues that the trial court struck the arming enhancement on count 1 in light of Manuel's testimony at sentencing that he was keeping the shotgun for his brother and that she did not know about it. The jury did not have the benefit of this explanation. Because the court of appeal reviews the sufficiency

16

1   of the evidence in light of the evidence <u>actually</u> introduced at trial, not what <u>could</u>

2   have been introduced,  it reasonably rejected petitioner's argument as irrelevant.

3          The California Court of Appeal's rejection of petitioner's claim was not

4   contrary to, or involved an unreasonable application of, clearly established

5   Supreme Court precedent, or was based on an unreasonable determination of the

6   facts.  <u>See</u> 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief

7   on this claim.  <u>Id</u>.

8          **B.      Ineffective assistance of counsel**

9          Petitioner raises two claims for relief based on ineffective assistance of

10  counsel.  Petitioner claims that her attorney (1) failed to move to suppress

11  evidence, and (2) failed to call witnesses that would have testified as to her living

12  arrangements with Manuel.

13         The trial court conducted an evidentiary hearing on petitioner's claims.  At

14  the end of the hearing, it denied the two claims and made the following findings:

15              Well, as far as the consent to search, the fact that the police told
16         her that they could get a warrant, that statement by the police was
           supported by the fact that there had been a search warrant already
17         issued for House No. 9.  A magistrate who had issued that warrant,
           faced with the possession by a neighbor of a large amount of
18         methamphetamine, certainly would have supplied what has been
           described as a "piggy-back warrant."  It would have been fairly easy to
19         convince a magistrate of that.  So a search warrant certainly could have
           been issued.  And the fact that the defendant signed the consent form
20         knowing that a warrant could be issued was not coercion, and the
           consent was freely given.

21              A 1538.5 motion would not have been successful under the
           evidence that I heard at the trial, and some of which I heard here also,
22         and also at the preliminary examination, so Mr. Moore's decision not
           to make a 1539.5 Motion to Suppress the evidence in house No. 11
23         would not have been successful.

24              With respect to the testimony of the family members, some of
           that would have been damaging to the defendant rather than helpful
25         because of the testimony that the defendant was using
           methamphetamine herself.  So I believe that Mr. Moore's decision not
26         to call family members would not have changed the outcome of the
           case at all, would not have affected the ruling.

27

28                                              17

I find, therefore, that Mr. Moore was not ineffective in his assistance of the defendant in the trial of the case, and the motion – strike that– the Order to Show Cause is therefore discharged and the Petition for Writ of Habeas Corpus is denied.

Rep. Tr. at 238-39 (Ex. L).

To prevail on a claim of ineffective assistance of counsel, petitioner must pass the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "counsel's deficient performance prejudiced the defense." Id. at 687-88. Concerning the first element, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Hence, "judicial scrutiny of counsel's performance must be highly deferential." Id. To fulfill the second element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id.

### 1.    Failure to call defense witnesses

Petitioner claims that her attorney failed to call defense witnesses that would have testified as to her living arrangements with Manuel. Her defense at trial was that all the contraband found was in Manuel's possession. Petitioner contends that she and Manuel did not share a bedroom and that she only entered the room to vacuum or retrieve things. The witnesses that counsel failed to call would have testified, for instance, that petitioner and Manuel were living in separate bedrooms and were not living as husband and wife; that petitioner was not receptive to having Manuel live in the house; and that Manuel was highly "secretive" and did not allow petitioner in his bedroom.

Petitioner cannot establish that her attorney's performance fell below an

18

"objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88.  During the evidentiary hearing, the trial court found that some of the testimony from petitioner's family members would have been damaging to her case, rather than helpful.  The witnesses' testimony would have revealed that petitioner used methamphetamine and even used some on the morning prior to the search.   In light of this finding, counsel's failure to call defense witnesses was not an unreasonable tactical decision.

Furthermore, petitioner cannot establish that she was prejudiced by the omission.  See id. at 694.  At the evidentiary hearing, the trial court reasonably concluded that petitioner's counsel's decision not to call defense witnesses would not have changed the outcome of the case at all.  The evidence shows that while petitioner and Manuel may have been divorced and lived separate lives, petitioner was involved in the drug business.  For instance, petitioner's identification card was found in a purse located in Manuel's bedroom, where the police found methamphetamine, marijuana, packaging materials, a scanner, and a shotgun.  Bills made out to petitioner were found in the office where the police also found pay-owe sheets commonly used by drug dealers.  Moreover, petitioner was found holding four pounds of methamphetamine.

The state court's conclusion was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.  Id.

### 2.   Failure to file suppression motion

Petitioner claims that her attorney was ineffective in failing to move to suppress evidence discovered in her residence on the basis that her consent to the search of her residence was obtained in violation of the Fourteenth Amendment.

1    On the day of the arrest, the police arrived with a search warrant to search

2    unit 9.  After observing Avila walk from unit 9 to unit 11 carrying something, the

3    police approached unit 11 and searched outside the residence.  After about 20 to 30

4    minutes, petitioner gave the police four pounds of methamphetamine.  Three or

5    four agents entered unit 11 to do a protective sweep.  Within minutes of entering

6    unit 11, the police explained the consent form to petitioner and Manuel, which

7    both read and signed.  Petitioner argues she was coerced into signing the consent

8    form because the police told her they would obtain a search warrant even if she did

9    not sign it.  Petitioner argues that the police lacked probable cause to obtain a

10   search warrant and, even if the police had probable cause, her consent was tainted

11   by the protective sweep.

12   In order to show prejudice under Strickland from failure to make a motion,

13   petitioner must show that (1) had her counsel made the motion, it is reasonable that

14   the trial court would have granted it as meritorious; and (2) had the motion been

15   granted, it is reasonable that there would have been an outcome more favorable to

16   her.  Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

17   Consent to a search must be freely and voluntarily rendered and not a

18   product of police coercion.  Whether a consent was voluntarily given depends on

19   the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 227-

20   28 (1973).  Relevant factors include the length and nature of detention, the use of

21   coercion or punishment by the police, and indications of "more subtle forms of

22   coercion that might flaw [an individual's] judgment."  United States v. Watson, 423

23   U.S. 411, 424 (1976).

24   Here, counsel's failure to file a motion to suppress did not fall below an

25   objective standard of reasonableness and did not result in prejudice to petitioner.

26   See Strickland, 466 U.S. at 687-88, 694.  Petitioner cannot show that had her

27

28                                          20

counsel made the motion, it is reasonable that the trial court would have granted it. See Wilson, 185 F.3d at 990.  To the contrary, the trial court correctly found during the evidentiary hearing that the motion to suppress would not have been granted.  The trial court found that a magistrate judge "certainly" would have issued a search warrant based on the evidence.  For instance, a search warrant was already issued for unit 9; co-defendant Avila was seen walking from unit 9 to unit 11 carrying a rectangular object; and petitioner came out of unit 11 holding four pounds of methamphetamine.  The trial court concluded that even if petitioner had not consented, the police still would have obtained a search warrant and inevitably discovered the evidence in her residence.

The state court's finding that petitioner was not denied effective assistance of counsel for failure to file a motion to suppress was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.  Id.

### C.    Failure to instruct

Petitioner raises three claims for relief based on failure to instruct: (1) failure to instruct on the requirement of a unanimous verdict, (2) failure to instruct on the lessor included offense of simple possession of methamphetamine, and (3) failure to instruct on accomplice testimony.

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  Petitioner must also show actual prejudice from the error, i.e., that the error had a substantial and injurious effect or

21

influence in determining the jury's verdict, before the court may grant federal habeas relief. Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings. Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987). A habeas petitioner whose claim involves failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden." Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

### 1.   Failure to instruct on the requirement of a unanimous verdict

Petitioner claims that the trial court erred by failing to give a sua sponte unanimity instruction regarding count 1, the charge that she possessed methamphetamine for sale. At the trial, the prosecutor argued two alternative theories to convict petitioner on count 1, that she possessed either the four pounds of methamphetamine in the Tupperware container or the smaller quantities of methamphetamine found in the headboard of the bed in the bedroom.

In a criminal case, the jury must agree unanimously the defendant is guilty of a specific crime. People v. Diedrich, 31 Cal.3d 263, 281 (1982). When the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. People v. Castro, 133 Cal. 11, 13 (1901); People v. Williams, 133 Cal. 165, 168 (1901) ; CALJIC No. 17.01.

Here, the California Court of Appeal found that a unanimity instruction

should have been given because the prosecutor argued that petitioner could have possessed either of two different quantities of methamphetamine. However, petitioner's claim fails because the state court reasonably concluded that the failure to give a unanimity instruction did not result in prejudice to petitioner. See Brecht, 507 U.S. at 637. The state court explained:

> When a jury's verdict shows that the jurors unanimously agreed on the conduct justifying the defendant's conviction, the omission of a unanimity instruction is harmless. (Citation omitted) Here the jury's findings regarding the weight enhancement reveal that they convicted [petitioner] of possessing the four pounds of methamphetamine for sale while they convicted Manuel of possessing the methamphetamine in the headboard for sale. When the jurors were polled after rendering their verdicts, each juror affirmed the verdicts were his or hers. Because the jurors unanimously agreed on what conduct by [petitioner] and Manuel warranted the conviction of each for possession of methamphetamine for sale, we conclude that the omission of a unanimity instruction was harmless beyond a reasonable doubt.

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *56-57.

The state court's conclusion was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). petitioner is not entitled to federal habeas relief on this claim. Id.

>            2.     Failure to instruct on the lesser-included offense of simple possession of methamphetamine

Petitioner claims that the court erred in failing to instruct sua sponte regarding lesser-included offenses of counts 1 and 5, namely simple possession of methamphetamine and marijuana, not for sale.

Petitioner was found by police carrying four pounds of methamphetamine. In the bedroom, in the headboard of the bed and in or on a cabinet, were plastic bags containing lesser quantities of methamphetamine. In a storage area in a toolbox labeled, "Do not open. Manuel only," was 364 grams of marijuana. In a storage shed behind petitioner's unit was over a pound of marijuana hanging on a

rope drying and more marijuana in a container.  The police found other indicia of drug dealing in the residence including pay-owe sheets, a police scanner, and a scale.

Petitioner's claim fails because "the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional question."  Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998).  Furthermore, there is no clearly established Supreme Court authority requiring such instructions.  Although the Supreme Court has held that a failure to instruct on a lesser-included offense may be constitutional error in a capital case, Beck v. Alabama, 447 U.S. 625, 638 (1980), it has not extended this holding to non-capital cases.

The Ninth Circuit has suggested that "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929.  The Ninth Circuit's observation in Solis–that the failure to give an instruction on lesser-included offenses may violate a defendant's constitutional right to adequate jury instructions on his theory of the case–does not compel a different result because it is not based on clearly established Supreme Court precedent, as required by 28 U.S.C. § 2254(d).  See, e.g., Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993) (rejecting claim that jury instructions violated defendant's constitutional right to a meaningful opportunity to present a defense because the cases in which the Court has invoked this principle dealt either with the exclusion of evidence or the testimony of a defense witness; none of them involved restrictions on a defendant's ability to present an affirmative defense).

Petitioner's claim would fail even if Solis applied.  The California Court of Appeal determined that, under California law, the trial court did not err in omitting

the lesser-included offense instructions. Under California law, the trial court has a duty to instruct sua sponte on every lesser-included offense which has substantial evidentiary support, "'even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given.'" People v. Breverman, 19 Cal.4th 142, 154 (1998).  Substantial evidence is evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed.

The state court found that there was no substantial evidentiary support upon which a reasonable juror could have concluded that petitioner possessed marijuana or methamphetamine for simple possession without intent to sell it.  It explained:

> The Ruizes were charged with possessing marijuana for sale based on over a pound of drying marijuana hanging in a storage shed, more marijuana in a plastic container in the shed, three bags of marijuana amounting to 364 grams in Manuel's tool box in a storage area, another bag of marijuana in the headboard of the bed, and other indicia of drug sales, including pay-owe records, a police scanner, a scale, a shotgun, and ammunition. There was expert testimony that such large quantities of marijuana would be possessed for sale. There was no testimony that the Ruizes possessed all this marijuana for personal consumption.
>
> As explained above, [petitioner] was convicted of possessing four pounds of methamphetamine for sale. There was expert testimony that no user would have this much methamphetamine on hand for personal use. Manuel was convicted of possessing methamphetamine for sale based on the indicia of drug sales and packaged methamphetamine in his bedroom. Three packages of approximately 49 grams, 12 grams, and 2 grams were in a black bag in the bed's headboard. One package of .16 gram was in or on a bedroom cabinet. There was expert testimony that all these indicia indicated possession for sale. There was no testimony that the Ruizes possessed any of these amounts of methamphetamine for personal use. Personal use could be inferred from the presence of a tube straw for snorting methamphetamine and a number of used plastic baggies.
>
> We believe in light of all this evidence, including the pay-owe records, the scale, and the packaging materials, there is no way a reasonable juror could have concluded that either the marijuana or the methamphetamine was possessed by either [petitioner] or Manuel without the intent to sell it. We conclude that the trial court did not err in omitting lesser included offense instructions.

25

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *60-61 (citation omitted).

Under Solis there must be substantial evidence to warrant the instruction on the lesser-included offense.  See Solis, 219 F.3d 929-30 (no duty to instruct on voluntary manslaughter as lesser included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice); see also Cooper v. Calderon, 255 F.3d 1104, 1110-11 (9th Cir. 2001) (no duty in death penalty case to instruct on second degree murder as a lesser included offense because the evidence established that the killer had acted with premeditation, so if the jury found that the defendant was the killer, it necessarily would have found that he committed first degree murder).  The California Court of Appeal reasonably determined that there was not.  Petitioner would not be entitled to relief even if Solis applied here.

The state court's rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).   Petitioner is not entitled to federal habeas relief on this claim. Id.

### 3.   Failure to instruct on accomplice testimony

Petitioner claims that the trial court erred in failing to give sua sponte cautionary instructions about the testimony of accomplice Avila exonerating herself and incriminating petitioner.

Avila testified in her own defense that her husband, Marin, a drug dealer, was familiar with the Ruizes and that they occasionally whispered in her presence. Avila further testified that on the day of the arrests, Marin put the methamphetamine in her laundry basket and told her to take it to the Ruizes,

saying, "They already know what this is."  The prosecutor relied on Marin's statement to show that petitioner knew about the four pounds of methamphetamine.  Neither petitioner nor the co-defendants asked for accomplice instructions at the trial.

The failure of a trial court to give an instruction sua sponte about the unreliability of accomplice testimony does not necessarily require a reversal.  See United States v. Bosch, 914 F.2d 1239, 1247 (9th Cir. 1990).  The need for the instruction must be analyzed in light of the circumstances in the case.  Other credibility instructions combined with arguments by counsel might make the cautionary instruction unnecessary.  Id. at 1248.  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995).

The California Court of Appeal noted that under California law, a cautionary instruction generally should be given sua sponte to the jury whenever an accomplice, or a witness who might be deemed an accomplice, is called as a witness to testify.  The court declined to extend the general rule to require sua sponte accomplice instructions when a co-defendant testifies.  Because neither petitioner nor co-defendants (which included Avila) asked for accomplice instructions, the court concluded that "the trial court had no sua sponte obligation to instruct the jury to look for corroboration of Avila's testimony."  People v. Rivera, 2002 Cal. App. Unpub. LEXIS 8360, at *35.

Even if accomplice instructions should have been given sua sponte, petitioner's claim fails because there was no prejudice from the omission.  See Brecht, 507 U.S. at 637.   The state court of appeal found ample corroborating evidence of petitioner's involvement in Marin's drug dealing.

[Petitioner and Manuel's] own residence contained evidence of selling methamphetamine and marijuana. It is extremely unlikely that

Marin would have entrusted them with $ 24,000 worth of methamphetamine without a prior agreement. "Under these circumstances, it is not reasonably probable that the jury would have reached a result more favorable to defendants had it been instructed to view with care and caution that portion of [Avila's] testimony that inculpated defendants."

People v. Ruiz, 2002 Cal. App. Unpub. LEXIS 8360, at *36. This court agrees.

Petitioner is not entitled to federal habeas relief on this claim. See 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  July 30, 2007

CHARLES R. BREYER
United States District Judge

G:\CRBALL\2006\0775\habeas.wpd